The Honorable Judges of the United States Court of Appeals, in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention that the Court is now sitting. May God save the United States and this Honorable Court. Good morning, ladies and gentlemen. Our first case for argument this morning is United States v. Bolden. Ms. Masters, perhaps it would be a good idea to wait a moment or two until our high school students have come in. All right, Ms. Masters, let's proceed. Good morning, and may it please the Court. I represent Defendant William Beeman, and this morning I'll be addressing the defendant's entitlement to withdraw their pleas due to the multiplicity error raised in the Beeman-Bolden brief and joined by the other two defendants. The defendants entered plea agreements agreeing to the unlawful result of three 924C convictions, all arising from a shooting on October 4, 2014. As the government has conceded, that was an error. Today I will briefly discuss why that error was plain and why it affects the defendant's substantial rights and the fairness, integrity, and public reputation of the judiciary. The Adjaye case in this circuit establishes that the entry of multiplicity convictions is a plain error. And as we discuss at length in our briefs, the Curitin case from 2014, which predates the pleas in this manner by more than five years, establishes that the multiplicity error, specifically with regard to 924C charges, arising from one shooting. This error regarding multiplicity... Ms. Masters, can I clarify something, please, before you go down there? Are you arguing that your clients thought they were facing a 30-year mandatory minimum consecutive sentence based on these 924C pleas, or are you just focusing on the fact that you can't have three convictions for the 924C, given that it was the same incident? Both, Your Honor, because what we're arguing is you couldn't have multiple convictions for 924C. They had seven counts against them, which meant that, in fact, when they entered the plea negotiation process, and we know this throughout the plea process, they believed that they would have faced actually a 70-year mandatory minimum on all seven of those counts because of the way they would have stacked. That was not explained to me. Are you arguing that based on the guilty plea that was taken in court, that they thought they were facing these three 924C convictions to be stacked for sentencing purposes? And if so, can you tell me where in the record you've made that argument? We're not arguing that they thought that they faced 30-year stacked sentence. We are arguing, though, that the fine provision shows that they believed they were subject to three convictions. Right, not the sentencing part of it, just the three convictions. And we are arguing that that misunderstanding of what someone can be convicted of, the number of counts of conviction, is absolutely a fundamental misunderstanding. It is a mutual mistake in this case because the court believed it, the prosecution believed it, the defendants believed it, that it utterly undermined the entire… That is, they believed, each of them believed, that he was facing $200 more in special assessment than he was in fact facing. Was there any other difference? Yes, absolutely, Your Honor, because what it affected was their ability to enter a knowing and intelligent… No, tell me concretely what in the real world it affected beside the size of the special assessment. In the real world? Yeah. It affected the size of the assessment, and in our view, the real world encompasses your entitlement to absolutely have a correct understanding of what you can be convicted of throughout the plea negotiation process. The answer is nothing. There is no effect that we can see other than the $200 special assessment. So your client is, in fact, facing a somewhat tiny amount lower penalty than he thought he was facing. Why would that affect his decision to plead guilty? Because, Your Honor, what it affects is when you don't understand that all you face when you enter the plea negotiation, when you don't understand that all you face is one conviction out of all of these seven counts, how could you possibly have been engaged in reasonable, knowing, intelligent plea negotiations about the costs and benefits of the plea you are being offered? And we know that the exchange in a plea agreement, the fundamental exchange… But wouldn't it matter what the implications of that plea would be? So in other words, if the $200 is the only impact of those additional counts, doesn't that go directly to the substantial rights and whether or not they would have pled guilty? Yes, that goes to the substantial rights. We think in the U.S. v. Cibran case, you can't also underweight the importance of signing an unlawful agreement and agreeing to counts of conviction for which you should not be sentenced. That is a fundamental error in this case. We also think that the fairness and public integrity of the system is really implicated here because they signed a plea waiver. So in addition to never having a proper understanding through the entire process, including the plea colloquy of what counts of conviction they could actually face, they signed an appeal waiver. They agreed to waive their right to appeal, to even challenge that on appeal. And we think that as well affects a substantial right, the fairness and integrity of the public and the public reputation of the judiciary. I see I'm into my rebuttal, so I'd like to reserve the rest of my time. Thank you. Certainly, Ms. Masters. Mr. Gallagher. Nicholas Gallagher of Clement and Murphy for Mr. Burris and Mr. Beecham. May it please the court. The proceedings below resulted, intentionally or otherwise, in the worst kind of bait and switch. Mr. Burris and Mr. Beecham bargained to plead guilty to vicar assault with a dangerous weapon in return for taking vicar-attempted murder off the table. Then they were sentenced based on the guidelines offense level for vicar-attempted murder anyway. And worst of all, given a sentence 10 years longer than the statutory maximum they could have received had they actually been convicted of vicar-attempted murder. This happened for two reasons. I wish you would use real words. You're trying to pronounce an initialism as if it were a word. I think it would help. We're generalists. Real words help. Yes, Your Honor. I was trying to avoid the mouthful of violent crimes in aid of racketeering assault for a dangerous weapon only because I had tripped over it a few times. That's the statute in question, violent crimes in aid of racketeering. And it has an unusual feature, which is that the attempted murder in aid of racketeering charge has a 10-year statutory maximum, but the assault charge has a 20-year statutory maximum. And the district court disregarded the structure of the statute, the language of the guidelines, and the only extant applicable case law, the Second Circuit's decisions in McCall and Padilla, which explain both. Mr. Gallagher, your clients signed very broad appellate waivers. Yes, Your Honor. And waiving their right to appeal their sentence or the manner in which it was calculated. Why haven't you waived this argument? We have three responses to that, Your Honor. The first is that our clients agreed to be sentenced to and not to appeal their sentence for vicar assault. If you could use real words, that would help. I'm sorry, Your Honor. To plead guilty to and not to appeal their sentence for the assault charge, not as to the murder charge. We maintain that there is a substantive as well as a formal guarantee there. And if not, then it wasn't knowing involuntary. But I think most of all, this is an exceptional case. It's highly unusual. The results were very anomalous and unjust. And it falls, if nothing else, under the doctrine of litos. We have really limited litos. I agree with that. Including recently. So how do you get around that high, high hurdle that we have said litos imposes? Yes, Your Honor. I think to begin with, it can't be that litos was the only unique case this court will ever face. So there have to be some that fit within its doctrine. And I think the argument is, does this one? And if you look at NOLF, for instance, which the government cites, it concerns a two-point enhancement for acceptance of responsibility for a defendant who had pled from 30 years down to one year. That's obviously not exceptional. But this case includes not only an 18 years additional in prison, but it got there in a way that contravenes the statutory structure. It would collapse all the subparts of Vicar into one another. Pardon me. Of the violent crimes in aid of racketeering statute into one another. And it would collapse that into the racketeering influence corrupt organization statute. And, again, there's this odd fact that if the government had said to them, we really think you committed attempted murder, they would have received 10 less years in return for pleading to the higher charge. Do you agree that the admissions and the plea agreement were sufficient to find the attempted murder? I understand you disagree with the structure and that the guidelines allow for that. But do you agree that the admissions and the plea agreement were sufficient for the court to find attempted murder as the underlying crime? We have maintained that our clients never admitted to the requisite mens rea. However, I would say that if the government had chosen to prosecute under either the attempted murder in aid of racketeering statute or the racketeering influence to corrupt organization statute, they would have had a good argument for that. Yes. If I may, to turn to your point about the structure of the guidelines. The district court erred fundamentally by overlooking the phrase underlying crime or. Vicar has, beg your pardon, the violent crimes in aid of racketeering statute has. Just refer to it as the act. It's really very simple. Yes, Your Honor. In order to be convicted of this crime, you have to satisfy at least two elements, one of which is a violent crime, and the other one of which is a racketeering act. And they cannot be satisfied by the same evidence. That can be seen from United States v. Brady, which is 67 F. 3rd, 1421. That's the Ninth Circuit. But this court has also said that two thicker statutory elements cannot be collapsed into one. United States v. Rogers. You did it again. I know, Your Honor. I'm sorry. I am trying to distinguish. One of the most important things to understand in arguing to an appellate court is that we're a bunch of generalists, and your home-brewed initialisms and acronyms just bounce off. If you want to make an argument, you need to use real words. Your Honor, the reason I was trying to avoid the word act there, and I'm sorry for my phrasing, is because I was about to contrast it to the Racketeering Influence of Corrupt Organizations Act, which this was treated just like, but it has a crucial difference. The racketeering act can be satisfied by 57 different actions, most of which aren't crimes, unlike in the violent crimes context in which they're all underlying state crimes. So it makes sense that the racketeering guideline speaks only of the underlying racketeering activity and is assessed on pure real conduct principles, whereas the violent crimes guideline speaks of both a violent crime and a racketeering act. The two are to be weighed against one another, as the Sixth Circuit said in its decision in Nicholson. And the underlying point, and I see I'm into my rebuttal time, so I'll stop after this, is that you can't treat the underlying crime as if it were racketeering activity and then use that to free float into different parts of the violent crimes in a native racketeering statute. I'll reserve the remainder of my time. Thank you. Thank you, Mr. Gallagher. Mr. Whalen. Thank you, Your Honors. May it please the Court. Nathaniel Whalen here on behalf of the United States of America. This Court should affirm defendants' pleas as knowingly and voluntarily entered into, dismiss their sentencing argument pursuant to the appeal waiver, or otherwise affirm. And Judge Sainteve and Judge Easterbrook, I think you hit the nail right on the head on the withdrawal of the plea argument. What's the prejudice? The Supreme Court in Dominguez Benitez said that you have to show prejudice. It's more than just an error. You have to show that but for the error you would have gone to trial instead of pleading. And the real-world consequence of what happened here is $200 in special assessments. The defendants have never alleged that that $200 is the difference between going to trial on this indictment or pleading. And I think to their credit they haven't alleged that because it's frankly a little bit far-fetched to argue that they'd be willing to admit to this, essentially drive-by shooting, but go to trial over $200. Mr. Whalen, what's the correct factor that we look at to show that but for the error they wouldn't have entered this particular guilty plea agreement, or but for the error they wouldn't have pled guilty at all? What's the correct standard? I think it's but for the error they would not have pled guilty to this plea agreement, Your Honor. They wouldn't have entered this particular plea agreement. That's my understanding of what the Supreme Court said. That's correct. And their argument is they wouldn't have pled guilty to three crimes when there's only one crime there. So how do you respond to that? Well, excuse me, each case of the prejudice is going to turn on the facts of the given case. And I do think Your Honor's question about the sentencing exposure is a very good one because had they credibly said that they were facing 30 years' consecutive sentence, this is a very different case. But each of their sentencing memos asked for 10 years on the 924C conviction. They understood they were facing 10 years on the 924C convictions. Frankly, their second argument about sentencing today would be moot if they really believed they were facing 30 years because the guidelines still don't get up to 360 months' imprisonment with the relevant conduct analysis. And so they wouldn't care about that because they would have said, well, we're facing 360 no matter what. So in this particular case, Your Honor, frankly, they just haven't shown any prejudice. And I think the Filson case is a pretty good example. This court recently handed down where it's a $200 special assessment. A defendant is probably not going to be able to show prejudice based on $200 in the special assessment. And it's not going to affect the fairness, integrity, and reputation of the judicial proceeding to affirm a conviction where the sentencing is off by $200. Your Honors, the fact that they believe they were subject to three convictions as opposed to one, they haven't shown any tangible effect of that. And yes, the concurrent sentence doctrine might come into play, and the $200 special assessment are applicable. And that's the cases they cite. That keeps their case from being moot, but it doesn't show the prejudice that they have to show. It doesn't show that but for that error, they would have gone to trial. And let me just address the Sura case, and hopefully I'm pronouncing that correctly. The defendant's point to that is an argument that the appellate waiver is really the difference, and they're adversely affected because they signed an appellate waiver. Sura dealt with the issue of an appellate waiver and whether the court did not explain the fact that they were waiving their right to appeal. So you look at that error and figure out whether that's the difference between going to trial or not. In Sura, it was the appellate waiver. In this case, it's $200 special assessment. Unless this court has any questions on the withdrawal of plea. Just a technical question. Has the special assessment been paid? I don't know the answer to that, Your Honor. I'd be happy to let the court know if you care to know. I don't think it's vital. Okay. All right. Please proceed. Moving on to the sentencing argument, Your Honors, and it seems the defendants are putting their eggs in the Litos basket. I'm very familiar with the facts of Litos, and the defense asked this court to expand Litos to cover this case. Just as the defendants in the United States v. Cooper, Oliver, and Ross did, that's a case where the defendants weren't arguing about a lower sentence. They were actually saying we are innocent of 924C convictions. They asked this court to expand the Litos exceptional miscarriage of justice exception to actual counts of conviction and to saying that we should not be sentenced, convicted, or punished at all for these counts. And this court rightfully said, nope, Litos is a different case. It rightfully refused to expand Litos to the facts of that case. And the fact that the defendants here were facing a higher guideline range is less prejudicial than actual counts of conviction they believed they should never have been sustained. Essentially, the defendants' argument would be if there's a bad error, a really bad error, this court should expand the appellate waiver exception. This court has never adopted that, and that's frankly an unworkable approach as it relates to a term of imprisonment. Your Honors, I'm happy to talk about the actual substance of the guideline dispute at issue. Unless this court has any questions, though, we'd rest on our briefs on that point and ask that you affirm the convictions and sentences. Thank you, Mr. Whalen. Thank you, Your Honors. Ms. Masters, anything further? Just briefly, Your Honor. SURA isn't about just that the mistake was a plea waiver and whether this court vitiates a plea because the plea has been waived. SURA stands for the principle that one does not, that this court is not engaged in the process of rewriting plea agreements. And we know here that an error has occurred, and we know that the error that occurred here affects a fundamental underpinning of the entire plea process. As the court in Gallaudet ruled, a defendant's right to have basic information, a proper understanding, an accurate understanding of what he can be convicted of is a fundamental basis of the entire plea process. That didn't happen here, and that and the government has not contended otherwise. And because that didn't happen, and we do point to the plea waiver because not only did that not happen, not only did they not have a proper understanding of the consequences and of what they could be subject to, they then appealed their, you know, waived their right to appeal. Those are fundamental errors that require that they be entitled to withdraw their plea. For the reasons in our brief, we ask that that be allowed and or alternatively the sentence be corrected. I'm going to cede the remaining time. Thank you. Thank you, Ms. Masters. Mr. Gallagher. Thank you, Your Honor. Just one quick point. Judge Easterbrook, I heard you ask earlier about what the real world consequences were. The real world consequences for my client and our portion of the argument are clear. If they'd been sentenced as the only existing case law said they should have been, they would have received approximately a dozen years in prison. If the government had said to them, we believe that real conduct principles apply here and that you committed attempted murder, they would have taken the higher plea and been sentenced to 20 years in prison. Only through the combination of this uniquely odd statutory structure and the bait and switch, whether intentional or otherwise underlying this, could they attain the 30-year sentence. That is what makes this more than just a bad error. It makes it unique and exceptional and falls under allegiance. The court should reach the case, vacate, and remand. Thank you. Thank you very much. Ms. Masters, Mr. Gallagher, we appreciate your willingness and that of your law firm to accept the appointment and your assistance to the court as well as your client. The case is taken under advisement.